Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/07/2020 09:07 AM CDT

State of Nebraska, appellee, v.
Anthony Moreno, appellant.
___ N.W.2d ___

Filed June 30, 2020.    No. A-20-067.

1. **Pleadings: Judgments: Appeal and Error.** A trial court's decision to reopen a case to receive additional evidence is reviewed for an abuse of discretion.
2. **Criminal Law: Courts: Juvenile Courts: Jurisdiction: Appeal and Error.** A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion.
3. **Trial: Evidence: Appeal and Error.** Among factors traditionally considered in determining whether to allow a party to reopen a case to introduce additional evidence are (1) the reason for the failure to introduce the evidence, i.e., counsel's inadvertence, a party's calculated risk or tactic, or the court's mistake; (2) the admissibility and materiality of the new evidence to the proponent's case; (3) the diligence exercised by the requesting party in producing the evidence before his or her case closed; (4) the time or stage of the proceedings at which the motion is made; and (5) whether the new evidence would unfairly surprise or unfairly prejudice the opponent.
4. **Courts: Juvenile Courts: Jurisdiction.** The determination of whether a district court or a juvenile court should exercise jurisdiction over a juvenile involves consideration of the juvenile's best interests and the public's safety.
5. **Criminal Law: Courts: Juvenile Courts: Jurisdiction.** When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter to juvenile court pursuant to Neb. Rev. Stat. § 29-1816(3) (Cum. Supp. 2018).
6. **Criminal Law: Courts: Juvenile Courts: Pleadings.** In conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ a balancing test by which public

protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile.

7. **Criminal Law: Courts: Proof.** The burden of proving a sound basis for retention of a pending criminal case in the district court lies with the State.

8. **Criminal Law: Courts: Juvenile Courts.** Age alone does not support a transfer of a criminal proceeding to juvenile court.

Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge. Affirmed.

Sanford J. Pollack, of Pollack & Ball, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

PIRTLE, RIEDMANN, and BISHOP, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Anthony Moreno appeals from the order of the district court for Lancaster County denying his motion to transfer his case from the district court to the juvenile court. Finding no abuse of discretion in the district court's order or in its procedure, we affirm.

## II. BACKGROUND

Moreno was 15 years old on the night he and three friends (ages 14, 14, and 16) decided to steal a vehicle in December 2018 in Lincoln, Nebraska. They located an unoccupied vehicle with a running engine at about 4 a.m., and Moreno drove the vehicle to a location near the house of one of the other friends. They then drove around, making various stops, and successfully evaded law enforcement for the first time at about 7 a.m. At approximately 8:05 a.m., another law enforcement officer observed the stolen vehicle and followed it in an unmarked patrol car while dispatch made arrangements for other officers to respond to the location. Once law enforcement attempted to stop the stolen vehicle, Moreno accelerated,

began swerving, and ultimately went into a ditch and rolled; its passengers were ejected. One passenger age 14, Zayne Yost, was killed. Moreno initially denied driving, claiming that Yost had been the driver and that he did not know the vehicle was stolen; later, he admitted that he was operating the vehicle. A grand jury indicted Moreno for manslaughter, finding that he killed Yost "unintentionally while in the commission of an unlawful act, to wit: Operate a Motor Vehicle to Avoid Arrest."

Moreno filed a motion to transfer his case to the separate juvenile court of Lancaster County. Hearing was held on August 7, 2019, at which time testimony was offered by Dr. Stephanie Bruhn, a psychologist hired to perform a forensic evaluation of Moreno. She testified that based upon her testing of Moreno, her interview with him, and her review of various materials, it would be in Moreno's best interests to undergo "intensive trauma-informed treatment," individual therapy, family therapy, aggression replacement training, and substance abuse treatment. She recommended a psychiatric residential treatment facility (PRTF), such as Boys Town, followed by probation or some other type of monitoring through urine analysis to confirm that he has not relapsed. She opined that all of the treatment she recommended was available in the community and is available at the Youth Rehabilitation and Treatment Center (YRTC) in Kearney, Nebraska; Boys Town; and the Nebraska Correctional Youth Facility (NCYF). She explained that the NCYF's population is comprised of individuals up to age 19 and that when residents turn 19 years old, they are transferred to an adult facility.

Bruhn revealed that Moreno had been associated with a gang for about 6 months prior to this incident, but was now working on removing himself from that gang. She further testified that she performed a risk assessment that had previously been conducted in March 2019 when Moreno was at the juvenile detention facility in Lincoln. The purpose of the assessment is to determine a person's risk factors for engaging in

general violence in the future. At the earlier date, Moreno was placed in the high-risk category for general violence. However, he was retested by Bruhn in July 2019, after having received some treatment at the PRTF, and scored in the moderate category for general violence. Bruhn interpreted that to mean that he was amenable to treatment and that he had made progress.

Bruhn explained that putting a 16-year-old offender (Moreno's age at the time of the hearing) into a facility with much older offenders can be harmful to the younger person because older people have more antisocial behaviors and attitudes that can impact the younger inmate. It was her opinion that the most intense appropriate therapy would be out in the community. She acknowledged on cross-examination that Moreno has been given juvenile intervention since July 2015 and has been afforded intensive family preservation and multisystemic treatment, which were not successful. She also acknowledged that after this incident but prior to being placed at the PRTF, Moreno had additional contact with law enforcement for making social media threats of bringing a gun to school. She conceded that his cooperation did not start until he was indicted on manslaughter charges and that he now has external motivation to comply. She further admitted that Moreno's compliance with probation and treatment did not begin until April 2019, despite his involvement in the juvenile justice system since July 2015, and that he has amassed charges of terroristic threats, burglary, and assault, as well as the current charge of manslaughter. She conceded that at the time of the hearing, Moreno had been compliant for only about 4 months.

Amy Hernbloom, Moreno's mental health therapist from the PRTF, also testified. She stated that Moreno first came to the PRTF in April 2019 and remained there 10 to 12 days. He was initially placed through the juvenile court system prior to the current charges being filed and was removed when the present case was filed. He was later returned to the PRTF.

According to Hernbloom, Moreno has done very well at the PRTF, actively engaging in therapy. She confirmed that the treatment modalities recommended by Bruhn are available at Boys Town.

Moreno's probation officer, Courtney Goldenstein, began working with him in December 2018 as the "conditional release officer." She testified that Moreno began on conditional release in November 2018 and continues to be on conditional release. He has been detained since March 2019 for having posted "Snapchat" videos in which he made terroristic threats. A Lancaster County juvenile court judge ordered the PRTF based on evaluations of Moreno at the time. He was admitted to the PRTF at Boys Town on April 22, 2019; he was arrested there about 10 to 12 days later for the current charges. However, based upon his positive behaviors, Boys Town was willing to readmit him. According to Goldenstein, Moreno's current placement has the ability to access all the needs identified by Moreno's psychiatrist.

Goldenstein admitted that she was familiar with a juvenile case in Thayer County involving Moreno that was closed in August 2018 and a Lancaster County juvenile court case that was opened in September 2018. Contrary to Bruhn's testimony, Goldenstein opined that Moreno's intensive family preservation treatment in Thayer County was successful, but she admitted his multisystemic treatment in Lancaster County was not. Moreno has been placed out of home in a kinship foster home, foster home, group home, and shelter. He did not begin to do well until he was placed at the detention center and then at the PRTF. Goldenstein admitted that to her knowledge, there have never been any manslaughter cases in juvenile court; however, she was also unaware of any 15- or 16-year-old juvenile who has been charged with manslaughter in Lancaster County.

Finally, Goldenstein explained that Moreno has completed the program at the PRTF and is set to move to a lower level of care at Boys Town unless there is a new law violation or he is noncompliant with probation or has a mental health need.

Therefore, if Moreno were adjudicated on the manslaughter charge, he would be placed in a group home at Boys Town, which has an average placement of 12 months. He would then step down to the family home setting at Boys Town.

The State called no witnesses but offered 14 exhibits, including a cruiser video depicting the events of December 26, 2018, corresponding reports from law enforcement, forensic evidence from the accident, and pleadings from Moreno's juvenile court cases in Lancaster and Thayer Counties. The juvenile court records reveal that Moreno was placed on probation in October 2015 in Thayer County for assault causing bodily injury and criminal mischief of $200 to $500. Additional charges were brought against him in April 2016 for receiving stolen property valued at $500 or less, and he was placed on supervised probation for 12 months. In May, he was removed from his family home on allegations of physical abuse, neglect, and drug use by a parent and was adjudicated as a ward of the State in August. In February 2017, he was charged with terroristic threats and admitted to the allegations. He was placed on probation for 18 months. As a result of the additional charges, his previous orders of probation were terminated. Moreno satisfactorily completed the 18-month term of probation for the terroristic threats and was discharged in August 2018.

A month after Moreno was discharged from probation in Thayer County, he was adjudicated in the separate juvenile court of Lancaster County for third degree assault. A supplemental petition was filed charging him with false reporting, to which he admitted in November 2018, and he was placed in a graduated sanctions program. He was unsuccessfully discharged for failure to cooperate, and on March 19, 2019, an order for immediate custody was issued. He was ordered detained at the juvenile detention center. On March 25, a second supplemental petition was filed charging Moreno with disturbing the peace, and he admitted to that allegation in April. The court found that Moreno should be conditionally released from the

juvenile detention center and placed at the PRTF at Boys Town. He remained there until he was arrested on the current charge, but was returned on April 15. He remained there at the time of the hearing on his motion to transfer.

On September 13, 2019, the State moved to reopen the evidence "to offer evidence of a material change in circumstances after the evidence was submitted." The court addressed the motion at a hearing on September 24. Moreno objected, stating that the court did not have the authority to reopen the proceedings because of the expedited procedures set forth in Neb. Rev. Stat. § 29-1816 (Cum. Supp. 2018), the expedited nature of filing an appeal once the transfer order is made, and the appellate courts' procedure for addressing juvenile transfer appeals. The court granted the motion, and new evidence was offered that day.

The State called Ryan Dvorak, the preadjudication coordinator specialist for Lancaster County Human Services. Dvorak testified that his department supervised Moreno's electronic monitoring ordered as part of his bond so he could return to the PRTF. Dvorak stated that he received a letter from Hernbloom on August 23, 2019, indicating that Moreno was being discharged from the PRTF. According to the letter, Moreno "demonstrated difficulty with accepting decisions from adult authority . . . by ignoring staff, cursing, engaging in aggressive behaviors and making negative self-statements." He ultimately bit a staff member. As a result of Hernbloom's letter, Dvorak notified the court that Moreno was having problems at the PRTF and had committed a violation by removing his electronic monitor bracelet.

Dvorak was later notified that the court issued an order revoking Moreno's bond and issuing a bench warrant for his arrest. He was transferred to the Lancaster County detention facility for youth and remained there following the issuance of the warrant. At Moreno's request and without objection from the State, the court agreed to keep the record open for Moreno to submit an additional exhibit, a letter from Hernbloom,

which was subsequently written and submitted on October 1, 2019. In her letter, Hernbloom described in more detail the events originally outlined in her August 23 letter.

The court issued its order on January 24, 2020, denying the motion to transfer. It set forth the elements it was required to consider under Neb. Rev. Stat. § 43-276 (Supp. 2019) and identified evidence as to each element. As to the first factor, it found that Moreno would likely be best amenable to treatment under the jurisdiction of the district court. As to many of the other factors, however, the court did not identify whether the factor weighed in favor of retaining jurisdiction. The court stated that Moreno faces a Class IV felony, with a potential maximum sentence of 2 years' incarceration and a maximum of 12 months' postrelease supervision. It stated, "In no event can his incarceration continue past his age of majority since he is presently only 16 years of age . . . . By contrast, adult probation could continue for five years, supervising him until he is 21 years of age." The court found that Moreno remains a risk to the public and that the recommendations of discharging Moreno to a community setting and then to home would not serve the security of the public.

Moreno timely appealed the denial of his motion to transfer.

### III. ASSIGNMENTS OF ERROR

Moreno assigns, restated and renumbered, that the district court abused its discretion by reopening the case to receive additional evidence and in finding that the State established a sound basis for retention of the case in district court. He also assigns that the court created an excessive delay in rendering its order.

### IV. STANDARD OF REVIEW

[1] A trial court's decision to reopen a case to receive additional evidence is reviewed for an abuse of discretion. See *State v. Stricklin*, 290 Neb. 542, 861 N.W.2d 367 (2015).

[2] A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an

abuse of discretion. *State v. Bluett*, 295 Neb. 369, 889 N.W.2d 83 (2016). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## V. ANALYSIS

### 1. Reopening Case to Receive Additional Evidence

The initial hearing on Moreno's motion to transfer was held on August 7, 2019. The State filed a motion to reopen the case on September 13, and the court granted the motion at a hearing on September 24. Moreno objected to the State's motion, stating that there was no statutory authority to reopen a hearing on a juvenile transfer request and that the expedited nature of such cases weighed against such a procedure. On appeal, he argues that the district court abused its discretion in granting the State's motion. We disagree.

[3] Among factors traditionally considered in determining whether to allow a party to reopen a case to introduce additional evidence are (1) the reason for the failure to introduce the evidence, i.e., counsel's inadvertence, a party's calculated risk or tactic, or the court's mistake; (2) the admissibility and materiality of the new evidence to the proponent's case; (3) the diligence exercised by the requesting party in producing the evidence before his or her case closed; (4) the time or stage of the proceedings at which the motion is made; and (5) whether the new evidence would unfairly surprise or unfairly prejudice the opponent. *State v. Stricklin, supra.*

Applying these factors, we find no abuse of discretion in the court's decision. The State moved to reopen the case so it could offer evidence of events that transpired with Moreno at the PRTF that occurred subsequent to the hearing on the motion to transfer; therefore, it was not evidence that could have been offered at the initial hearing. The evidence was both admissible and material to the case in that it provided

insight into Moreno's amenability to treatment at the PRTF. The State became aware of the event about which it sought to introduce evidence through an August 23, 2019, letter, and it promptly moved to reopen the case on September 13, with a hearing scheduled for September 24. The court had not yet issued its order on the pending motion to transfer, and there is no indication that it would have issued such an order prior to September 24. Finally, the evidence which the State sought to introduce was within the knowledge of Moreno because it involved activities in which he was involved, so there could be no surprise or prejudice to him.

[4] While acknowledging that a court has discretion in ruling on a motion to transfer, Moreno argues that the district court abused this discretion because "juvenile transfer hearings are expected to progress in an expedited manner." Brief for appellant at 28. While we agree that these hearings are to progress expeditiously, we also recognize that the determination of which court should exercise jurisdiction over a juvenile involves consideration of the juvenile's best interests and the public's safety. See § 43-276(1). In making this decision, the court should have before it all available information. Given the nature of the new information and the timeliness in which the State acted, we find no abuse of discretion in the district court's decision to reopen the case.

## 2. Sound Basis for Retention
### in District Court

Moreno argues that the court abused its discretion in finding that the State met its burden of establishing a sound basis for retention of the case in the district court. We disagree.

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district court over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles

may be initiated either in juvenile court or in the county or district court.

[5] When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter to juvenile court pursuant to § 29-1816(3). Upon a motion to transfer to juvenile court, the district court is required to hold a hearing which requires consideration of the following factors set forth in § 43-276(1):

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing, and "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court[.]" See § 29-1816(3)(a).

[6,7] As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Stevens*, 290 Neb. 460, 465, 860 N.W.2d 717, 725 (2015). "In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *Id.* "The burden of proving a sound basis for retention lies with the State." *Id.*

The district court set forth each of the factors contained in § 43-276 and identified the evidence that it considered as to each factor. Moreno asserts that "[i]t is clear" the district court analyzed each of the factors under the erroneous belief he had been charged with a Class IV felony—operating a motor vehicle to avoid arrest—when he had, in fact, been indicted on a manslaughter charge, a Class IIA felony. Brief for appellant at 14. We agree with Moreno that the court misstated the classification of Moreno's charge.

The indictment stated that "twelve or more jurors find a true bill in the case of the death of . . . Yost for the charge of manslaughter." It further stated that Moreno "did kill . . . Yost unintentionally while in the commission of an unlawful act, to wit: Operate a Motor Vehicle to Avoid Arrest as defined by Neb. Rev. Stat. §28-905(1)." Neb. Rev. Stat. § 28-905(1) (Reissue 2016) states that "[a]ny person who operates any motor vehicle to flee in such vehicle in an effort to avoid arrest or citation commits the offense of operation of a motor vehicle to avoid arrest." Section 28-905(3)(a)(ii) makes it a

Class IV felony if the flight to avoid arrest results in the death of any person. Therefore, violation of § 28-905(3)(a)(ii) is felony flight to avoid arrest. See *State v. Kinser*, 283 Neb. 560, 811 N.W.2d 227 (2012).

Here, however, Moreno was not indicted for felony flight to avoid arrest; rather, he was indicted for manslaughter, which includes the causing of death of another unintentionally while in the commission of an unlawful act. See Neb. Rev. Stat. § 28-305 (Reissue 2016). The unlawful act in which Moreno was engaged was fleeing to avoid arrest. Manslaughter is a Class IIA felony. *Id*. A Class IIA felony carries a penalty of 0 to 20 years' imprisonment, whereas a Class IV felony carries a maximum term of imprisonment of 2 years. Neb. Rev. Stat. § 28-105 (Reissue 2016). We will factor in the court's erroneous understanding of Moreno's indictment where relevant below in our analysis of the § 43-276 factors.

### (a) Type of Treatment

Relying upon the testimony of Bruhn and Hernbloom and the assessments and evaluations offered and received into evidence, the court found that Moreno has a long history of aggressive behaviors and requires treatment in a highly structured environment where he can develop positive coping skills. It recognized that all the treatments Moreno needs are available in the community, at the YRTC, the PRTF, and the NCYF, but determined that Moreno needs a secure, highly structured setting. It concluded that this factor militates in favor of retaining jurisdiction in the district court where Moreno can be treated at the NCYF. Moreno argues this factor should have been resolved in favor of transferring jurisdiction to the juvenile court. We disagree.

Moreno relies primarily upon the testimony of Bruhn and Hernbloom who opined that he was amenable to treatment based in part upon the progress he was showing at the time of the first hearing. However, 2 weeks after the hearing, Moreno again became aggressive and belligerent and was

discharged from the PRTF. Even without this additional conduct, the record is clear that Moreno had numerous opportunities through the juvenile court system in both Lancaster and Thayer Counties to rehabilitate himself and failed to take advantage of those opportunities. At the time of the hearing, he had been compliant with probation for only 4 months, yet this compliance would lead him to step down in the PRTF to a group setting at Boys Town and to less-structured settings. Given Moreno's history, we agree with the district court that he is in need of a highly structured setting, and this factor weighs in favor of retaining jurisdiction.

### (b) Whether Offense Included Violence

The district court noted the absence of any evidence that Moreno intended to harm Yost, but recognized the ultimate outcome. It did not specify whether this factor weighed in favor of retention or transfer. Moreno argues it weighs in favor of transfer because there was no malice or forethought.

We agree that Moreno's indictment did not arise out of violence in the usual sense. What started out as a poor decision to steal a vehicle snowballed into more poor decisions in trying to evade law enforcement. This situation differs from many in that Moreno did not intend to engage in violent behavior; therefore, we find this factor weighs in favor of transfer.

### (c) Motivation for Offense

The district court determined that Moreno was motivated by a desire to avoid the consequence of the vehicle theft. Moreno argues on appeal that this is a mischaracterization and fails to acknowledge that all four juveniles participated, creating a level of peer pressure.

According to Bruhn's report, Moreno set out that night to "'have fun.'" Keeping in mind that the offense for which Moreno was indicted is manslaughter, which is unintentionally causing the death of another while engaged in an unlawful act, we focus on the motivation for the unlawful act. Here, Moreno was fleeing to avoid arrest; therefore, we agree with

the district court that Moreno was motivated by a desire to avoid the consequences of having stolen a vehicle. His motivation, being self-serving, weighs in favor of retention.

### (d) Age of Moreno and His Friends

Moreno was 15 years old at the time of the incident and 16 years old at the time of the transfer hearing. He will turn 19 years old in August 2022. His companions that night included two 14-year-old juveniles and one 16-year-old juvenile. The court did not indicate in whose favor this factor weighs, and Moreno argues that given his age and the fact that the other two survivors were referred to juvenile court, this factor supports a transfer to juvenile court. We disagree.

[8] The other two juveniles were ticketed for unlawful taking; however, they did not operate the fleeing vehicle that led to Yost's death. Given the disparity in the charges between them and Moreno, the fact that they were referred to juvenile court does not impact our jurisdictional decision; however, looking solely at Moreno's age, we find this factor weighs in favor of transfer. We recognize, however, that age alone does not support a transfer to juvenile court. See *State v. Esai P., ante* p. 226, 942 N.W.2d 416 (2020).

### (e) Moreno's Previous History

As detailed in the background section of this opinion, Moreno has a long history of involvement with the juvenile justice system despite his young age. He makes no argument that this factor could possibly support a transfer to juvenile court, and we find it militates in favor of retention.

### (f) Moreno's Best Interests

The district court found that Moreno's best interests will be served in a secure setting in which he can receive treatment, but the court did not indicate in whose favor this factor weighed. There is no conflict in the evidence as to the type of treatment Moreno needs or that he requires a structured secure setting. The evidence indicates that this type of treatment

can be provided in various facilities, including the PRTF, the YRTC, and the NYCF. Bruhn opined that Moreno would receive more individualized treatment at a YRTC than at the NYCF. She advocated for service in the community.

On appeal, Moreno cites to Bruhn's testimony and argues that placing him at the NYCF would expose him to persons who are "more criminal," which would diminish his ability to be rehabilitated. Brief for appellant at 19. Therefore, he states, it would be in his best interests to transfer the case to juvenile court. We disagree.

Our analysis of Moreno's best interests is not limited to where he can receive the recommended treatment, as that information is considered in our analysis of the first factor. Rather, the question of his best interests is broader. As we recently noted in *State v. Esai P.*: "[E]very juvenile's best interests would be better served by attempting rehabilitation in the juvenile court system rather than being sentenced to a term of imprisonment in the adult corrections system." *Ante* at 255, 942 N.W.2d at 435. But as in *Esai P.*, where past intervention through the juvenile court has proved unsuccessful, it may not be in the juvenile's best interests to continue efforts through the juvenile justice system. We find that to be the circumstance here. Therefore, we find this factor weighs in favor of retaining jurisdiction in the district court.

### (g) Consideration of Public Safety

Although not specifically stated, the court viewed this factor in favor of retaining jurisdiction, observing that despite intervention, Moreno's law violations continued to escalate, putting his passengers and the public at risk. Moreno relies upon Bruhn's testimony that Moreno posed only a moderate risk for general violence. We agree with the district court.

Upon initial assessment, Moreno was placed in the high-risk category for general violence. Four months later, Bruhn reassessed him and found him to be a moderate risk; however, at the time he had been compliant with the services offered.

Weeks later, however, he was released from the PRTF for assaultive and combative behavior. This leads us to believe that Moreno remains a public risk.

### (h) Ability to Appreciate Nature and Seriousness of Conduct

We view the district court's comments on Moreno's ability to appreciate the nature and seriousness of his conduct as a neutral factor, and we agree. Although he was reported to have shown empathy and remorse for his actions that led to the death of his friend, he initially lied to law enforcement and accused Yost of being the driver. Thereafter, on March 12, 2019, Moreno posted "Snapchat" videos threatening individuals who accused him of causing Yost's death, which resulted in a citation for disturbing the peace. In support of his position that he appreciates the nature and seriousness of his conduct, Moreno focuses on testimony of Bruhn and Hernbloom but ignores the fact that his conduct reflects otherwise. Because we find the evidence mixed on this issue, we consider this factor neutral.

### (i) Need for Detention Beyond Minority

It is under this factor that the district court makes the erroneous determination that Moreno is charged with a Class IV felony. As a result, it misstates the maximum amount of time that he could be incarcerated. It states:

> In no event can his incarceration continue past his age of majority since he is presently only 16 years of age, [and] when jail credit is applied and if good time is earned, he will be released less than one year after any potential sentencing date, followed by a maximum one-year supervision post-release.

The court further states that in contrast, "adult probation could continue for five years, supervising him until he is 21 years of age."

Moreno asserts that the court's analysis is "clearly erroneous" and that it is "impossible to know how the Court's

analysis would have changed had it realized that [Moreno] in fact could have remain [sic] incarcerated in the Department of Corrections long after he reached the age of majority." Brief for appellant at 22. We agree that the court erred in determining the amount of time Moreno could be incarcerated; however, we find its comments indicative of its belief that Moreno's best interests and the public's need for security require Moreno's detention or supervision beyond his 19th birthday.

A Class IIA felony carries no minimum sentence; therefore, we do not share Moreno's concern that the court did not realize he could remain incarcerated long after he reaches the age of majority. Rather, we interpret the court's statements as concern that Moreno will need at least supervision beyond the age of 19 and that the juvenile court would be unable to provide it. We view this factor in favor of the district court's retention of jurisdiction.

### (j) Mediation and Pretrial Diversion

Neither mediation nor a pretrial diversion program is available. Moreno makes no argument that these factor into a jurisdictional determination, so we decline to address them.

### (k) Use or Possession of Firearm

The court noted that Moreno had threatened use of a firearm after this incident but acknowledged that no firearm was ever found. It did not state what weight, if any, it gave to this factor. Moreno argues it should be given no weight, and we agree.

### (l) Juvenile Court Order

The court did not indicate if this factor weighed in favor of retention or transfer, and Moreno makes no argument that it does. We therefore give it no weight.

### (m) Gang Member

Moreno admitted to being associated with a gang, although he claimed he was trying to remove himself from it. Because

of his alleged attempted removal, he argues this weighs in favor of transfer. We disagree. We view his gang status at the time of the transfer hearing, and according to Moreno's own admission, he had been associated with a gang for about 6 months prior to the December incident. Therefore, we view this factor in favor of the district court's retention of jurisdiction.

### (n) Other Relevant Matters

The court found that the adult nature and circumstances of the crime causing the death of a 14-year-old juvenile is a circumstance more appropriate for adjudication in the district court. Moreno asserts that because the Legislature has not prohibited the removal of a manslaughter charge to the juvenile court, "the legislature clearly envisioned circumstances where no sound basis would exist to keep such charges in adult court." Brief for appellant at 25.

While there may be circumstances in which a manslaughter charge may be appropriate in juvenile court, we determine the present case does not present such circumstances. Moreno's night began with mischief when he arrived at Yost's residence near midnight and waited for his friend to sneak out of the house. The two of them then met up with the other two boys near 3 a.m. The four boys spent a period of time ringing doorbells and running away and stealing items from unsecured vehicles.

Moreno and the other 14-year-old boy stole the vehicle when they spotted it unoccupied with its engine running and drove down the street to pick up the other two boys. After evading law enforcement once, the boys hid, waiting to see if they were found again. When they got cold, they returned to the vehicle; however, they were spotted by law enforcement a second time, and law enforcement gave chase. Moreno appears to have been the driver for the entire sequence of events. The length of time that elapsed and the escalating events that occurred support a determination that Moreno made many conscious bad decisions that resulted in the death of his friend. We agree with

the district court that the circumstances of the situation support retention in the district court.

Moreno claims that the events he engaged in that night and the following morning were driven by impulsivity and impetuousness; therefore, the case should be tried in the juvenile court. We disagree. When we consider all of the relevant factors, including Moreno's past involvement with the juvenile court system, the rehabilitative efforts that were made, Moreno's subsequent behavior after the initial transfer hearing, and the prolonged activities that culminated in Yost's death, we find no abuse of discretion in the court's refusal to transfer the case to juvenile court.

### 3. EXCESSIVE DELAY

Moreno argues that the court created an excessive judicial delay when it took 4 months to issue its order. He claims this delay prejudiced his ability to participate in services offered through the juvenile court. Because we find no abuse of discretion in the district court's refusal to transfer the case, we find no prejudice to Moreno for any delay.

### VI. CONCLUSION

Based upon the reasons articulated above, we find no abuse of discretion in the district court's procedure or in its order finding a sound basis for retaining Moreno's case in district court.

AFFIRMED.