IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. HOLMSTROM-HUTTON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JESSE HOLMSTROM-HUTTON, APPELLANT.

Filed February 25, 2025.    No. A-24-742.

Appeal from the District Court for Douglas County: PETER C. BATAILLON, Judge. Affirmed.

Steven M. Delaney and Megan E. Shupe, of Reagan, Melton & Delaney, L.L.P., for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

PIRTLE, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

### INTRODUCTION

Jesse Holmstrom-Hutton appeals from an order of the Douglas County District Court denying his request to transfer his criminal proceedings to the juvenile court. Finding no abuse of discretion by the district court, we affirm.

### STATEMENT OF FACTS

In May 2023, Holmstrom-Hutton, who was born in July 2007, was charged by information with discharging a firearm while in or in proximity of any motor vehicle at any person, dwelling, building, structure, occupied motor vehicle, a Class IC felony; possession of a stolen firearm, a Class IIA felony; and first degree assault, a Class II felony. The charges arose after Holmstrom-Hutton, who was in an SUV, allegedly fired shots from a stolen firearm into a crowd

- 1 -

of girls, striking one girl in the chest causing injuries. Holmstrom-Hutton was 15 years old at the time of the offenses, 16 years at the time that the information charging the offenses was filed, and he is now 17 years old.

On June 8, 2023, Holmstrom-Hutton filed a motion to transfer his case to the juvenile court. The hearing on Holmstrom-Hutton's motion was initially scheduled for June 13, 2023, but was continued numerous times at defense counsel's request, for the purpose of engaging the services of a psychologist to conduct an evaluation of Holmstrom-Hutton. The hearing was eventually held on August 1, 2024.

Evidence presented at the 1-day hearing included testimony by City of Omaha Sergeant Jacob Chong; Rachel Holmstrom, Holmstrom-Hutton's mother; and Dr. Kari Perez, a psychologist specializing in forensic and clinical psychology. The court also received into evidence three exhibits: a copy of the warrantless arrest warrant for Holmstrom-Hutton and the affidavit in support thereof, Dr. Kari Perez' curriculum vitae, and Dr. Perez' evaluation of Holmstrom-Hutton.

### SERGEANT CHONG'S TESTIMONY

Sergeant Chong testified that on April 12, 2023, he was supervising the investigation of a shooting involving Holmstrom-Hutton. Officers reported hearing several gunshots and observed a Kia SUV with a male occupant leaning out of the rear driver's side window holding a gun. The male occupant was wearing all black, including a black ski mask or a black hood pulled up over his head with the hood tightly cinched. Officers, knowing that Kias were cars that were frequently stolen, believed that the vehicle likely was stolen and may have been involved in a recent felonious assault. Officers pursued the vehicle until the vehicle eventually stopped and the occupants fled on foot. Officers pursued the occupants of the vehicle, including the person later identified as Holmstrom-Hutton who had been observed hanging out the rear driver's side window after the shooting. When Holmstrom-Hutton was apprehended, he did not have any weapons on his person, however a gun was located in the area where Holmstrom-Hutton had been seen running. The gun was later determined to be stolen and was the same gun used in the shooting. None of the other occupants of the vehicle were in the area where the gun was located.

After Holmstrom-Hutton's arrest, he declined to speak with officers. However, the "getaway driver," Julian Castillo, admitted that the Kia was stolen and advised that he and Holmstrom-Hutton had been together all day. Castillo stated that he was part of the Lomas gang which was having issues with a newer gang called the Mafia Locos.

### RACHEL HOLMSTROM'S TESTIMONY

Rachel testified that Holmstrom-Hutton had not been involved in juvenile court and that "for the most part, he's a really good kid." She also testified that in the year since Holmstrom-Hutton had been detained at the Douglas County Youth Center (DCYC), she had seen "a significant" change in Holmstrom-Hutton, including an increase in his maturity and his focusing on completing his schoolwork. She noted that during his placement at DCYC, Holmstrom-Hutton had earned approximately 30 educational credits and had participated in counseling and wanted to continue to receive services. Rachel testified that emotionally, Holmstrom-Hutton was still a child and could benefit from juvenile court services.

## DR. KARI PEREZ' TESTIMONY

Dr. Perez testified that she performed a psychological evaluation of Holmstrom-Hutton at defense counsel's request. As part of that evaluation, Dr. Perez conducted an extensive psychosocial history; performed psychological testing to determine if any mental health disorders were present; performed a risk assessment; and interviewed Holmstrom-Hutton's mother, school officials, and one of Holmstrom-Hutton's counselors at DCYC. Dr. Perez' diagnostic impression was that Holmstrom-Hutton suffers from conduct disorder, severe adolescent onset; cannabis use disorder, severe; and attention deficit/hyperactivity disorder, inattentive presentation (rule out combined presentation).

According to Dr. Perez, factors that she considers in determining whether an individual is amenable to services through the juvenile court versus the adult court system include the risk for dangerousness, sophistication and developmental maturity, and treatment amenability in the juvenile court system. Dr. Perez stated that she is familiar with the services offered through the juvenile court and the types of treatment available to adults at the Nebraska State Penitentiary and that, in her opinion, Holmstrom-Hutton

> is amenable to treatment within the juvenile justice system. He has several psychological disorders that I feel are readily treatable and something that is common within the juvenile justice system. And I don't find those particular disorders to be difficult to treat, or more difficult than it would be for the average juvenile offender.

She also testified that Holmstrom-Hutton is "still very much an adolescent, and he has not reached a point in his development where he is more adult-like." She further testified that

> 15- to 16-year-olds are at the highest risk for impulsivity and poor decision-making due to brain activity that is underdeveloped. So the risk/reward system, or the dopaminergic system, is developed at that point, so risk taking is high at that time; whereas the executive functioning or the breaks that he might have for a risk/reward system is not developed until about ten years or so later.
>
> . . . .
>
> . . . Many of the treatment programs that I feel would be appropriate for him are a year long or less, which I feel positive about because I like to see the youth have an opportunity to be in the community with the court services, which is consistent with the research that shows that best practice."

## DISTRICT COURT'S ORDER

Following the hearing, in an order entered on September 30, 2024, the district court denied Holmstrom-Hutton's motion to transfer the matter to juvenile court. The court stated:

> At the time of this crime, [Holmstrom-Hutton] was about three months shy of his 16th birthday. He [has] had no contact with [the] Juvenile Court and [has] no criminal record. However, the crimes charged . . . are extremely serious. He was in the possession of a stolen gun and shot this gun into a crowd of girls, striking one in the chest. It is fortunate that no one was killed.
>
> [Holmstrom-Hutton] is now 17 years of age with less than two years before he turns 19, which is the age that [the] Juvenile Court would no longer have jurisdiction of him.

- 3 -

Thus, if he is transferred to Juvenile Court, can that Court change [Holmstrom-Hutton's] lifestyle, attitudes, and criminality in less than two years? Will [Holmstrom-Hutton] be receptive to the treatment provided by [the] Juvenile Court and change himself into a law-abiding and productive member of society? What is the risk to society?

The delay in the hearing on the Motion to Transfer to Juvenile Court was due to the difficulty in getting [Holmstrom-Hutton] evaluated by the psychologist Doctor Kari Perez, PhD. According to the testimony of Dr. Perez, [Holmstrom-Hutton] is amenable to Juvenile Court services, and he would benefit from Juvenile Court as it would provide [him] with more treatment than he would receive in adult Court. In her opinion, [Holmstrom-Hutton] is in the developmental stage of his life. Normally, the developmental stage ends around the age of 25. Youths at the age of 15 are at the highest risk for poor decisions.

[Dr. Perez] further opined that [Holmstrom-Hutton] has attention deficit disorder and [would] black out completely when he is angry. In this matter, [Holmstrom-Hutton] was worried that someone might get hurt in this fight. He was going to protect his friend's girlfriend. Evidently, he did not black out during this incident as he was able to sit on a door of the SUV and shoot 6-7 times into the crowd of girls.

In considering all the criteria set forth in *Neb. Rev. Stat.* §43-276, this Court is especially concerned about the violence used in this matter, public safety and the ability of the Juvenile Court to provide any meaningful benefit to [Holmstrom-Hutton] in the short time that it would have control over him. A stolen firearm is alleged to have been used by [Holmstrom-Hutton]. The shooting was [indiscriminate], struck a young girl in the chest, and multiple shots were fired. [Holmstrom-Hutton] is now 17 years 2 months old and has had at least 8 fights in the Juvenile Detention Center. To take the risk of transferring this matter to [the] Juvenile Court to change this violent and stupid behavior in less than two years, is not viable. The allegations against [Holmstrom-Hutton] are extremely violent and his actions in the [juvenile detention center] continue to be violent. This Court finds that the risk is too great for society to allow [Holmstrom-Hutton] to be released into society in less than two years. It will take more time for [Holmstrom-Hutton] to change his ways and to gain some common sense. The risks in this matter greatly [outweigh] any benefit [Holmstrom-Hutton] would receive from the Juvenile Court.

Holmstrom-Hutton appeals the denial of his request to transfer his case to the juvenile court.

## ASSIGNMENTS OF ERROR

On appeal, Holmstrom-Hutton contends that the district court erred in: (1) denying his motion to transfer to juvenile court and (2) failing to enter its decision within 30 days of the hearing on the motion to transfer as required by Neb. Rev. Stat. § 29-1816(3)(b) (Cum. Supp. 2024).

## STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Aldana Cardenas*, 314 Neb. 544, 990 N.W.2d 915 (2023). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

### DENIAL OF MOTION TO TRANSFER TO JUVENILE COURT

Holmstrom-Hutton's first assignment of error is that the district court erred in denying his motion to transfer his criminal case to the juvenile court.

In the instant case, when Holmstrom-Hutton moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to § 29-1816(3)(a), which subsection requires consideration of the following factors set forth in Neb. Rev. Stat. § 43-276(1) (Cum. Supp. 2024):

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." § 29-1816(3)(a). "[F]actors that are considered 'neutral' or 'not applicable' are equivalent to factors that favor transfer because § 43-276 starts with the presumption that the case should be transferred." *State v. Aldana Cardenas*, 314 Neb. 544, 561, 990 N.W.2d 915, 928 (2023). The classification of certain factors as "neutral," "not applicable," or "weighing in favor of transfer" are better described as factors that do not support a sound basis for retention. See *id.*

In conducting a hearing on a motion to transfer a pending criminal case to juvenile court, "[i]t is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Aldana Cardenas*, 314 Neb. at 561, 990 N.W.2d at 928. "[I]n order to retain the proceedings, the court need not resolve every statutory factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *Id.* "[T]he burden of proving a sound basis for retention lies with the State." *Id.* at 557, 990 N.W.2d at 926. When a district court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to juvenile court. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018).

We first note that Holmstrom-Hutton argues that "[a]lthough the trial court's [o]rder references the requirement to analyze the statutory factors, that is the extent of the analysis. The trial court merely mentioned it was required to review the factors but did not provide any further insight." Brief for appellant at 10. Although we acknowledge that the district court's 6-page order does not specifically address all the considerations for transferring a matter to juvenile court as set forth in § 43-276, this court recently noted that, "[w]hile it is the better practice for the trial court to refer to all the statutory factors in its order, the court is not required to do so." *State v. Lu*, 33 Neb. App. 45, 59, 10 N.W.3d 382, 394 (2024), *review denied* (Oct. 9, 2024). Rather, "the district court must make a statement of its findings that provides sufficient specificity to permit meaningful review by appellate courts." *State v. Lu*, 33 Neb. App. at 58, 10 N.W.3d at 394.

We initially note that although the district court's order failed to make findings regarding several factors, this failure does not preclude our review in this case because "our review on appeal focuses on whether the statutory factors that the court found to favor retention established a sound basis for doing so." *State v. Aldana Cardenas*, 314 Neb. 544, 561-62, 990 N.W.2d 915, 928 (2023).

Here, the district court identified that it had considered the factors contained in § 43-276 and, although it did not include in its order an analysis of each individual factor, it specifically identified information that weighed either in favor of or against retention. For example, regarding factors supporting transfer, the court recognized that Holmstrom-Hutton was "about three months shy of his 16th birthday" at the time of the alleged offenses and was 17 years old at the time of the transfer hearing; he had no criminal record; and had no prior contact with the juvenile court. See § 43-276(1)(d) (age of juvenile and ages and circumstances of others involved in offense); § 43-276(1)(e) (previous history of juvenile); § 43-276(1)(m) (whether juvenile court order has been issued for the juvenile pursuant to Neb. Rev. Stat. § 43-2,106.03 (Reissue 2016)).

Conversely, information identified by the district court weighing in favor of retaining jurisdiction included:
- that Holmstrom-Hutton was alleged to be in possession of a stolen gun which he then used to shoot into a crowd of girls, striking one in the chest;
- that "[t]he shooting was indiscriminate, struck a young girl in the chest, and multiple shots were fired";
- that Holmstrom-Hutton, at 17 years old, had less than 2 years before he turned 19 when the juvenile court would lose jurisdiction over him;
- that "[t]o take the risk of transferring this matter to Juvenile Court with less than two years to change [Holmstrom-Hutton's] violent and stupid behavior . . . is not viable";
- its concern over the juvenile court's ability "to provide any meaningful benefit" to Holmstrom-Hutton in the short time that it would have jurisdiction over him;
- it would take more time than the juvenile court would have jurisdiction over Holmstrom-Hutton for him "to change his ways and to gain some common sense";
- its concern over public safety and that the allegations against Holmstrom-Hutton were "extremely violent" and his actions while in custody have continued to be violent;
- that "the risk was too great for society" to allow Holmstrom-Hutton to be released in less than 2 years; and
- that "[t]he risks in this matter greatly [outweigh] any benefit [Holmstrom-Hutton] would receive from Juvenile Court." See § 43-276(1)(a) (type of treatment juvenile most likely amenable to); § 43-276(1)(b) (whether alleged offense included violence); § 43-276(1)(f) (best interests of the juvenile); § 43-276(1)(g) (consideration of public safety); § 43-276(1)(i) (best

interests of juvenile and security of public may require secure detention or supervision beyond minority); and § 43-276(1)(l) (unauthorized use or possession of a firearm).

The thrust of Holmstrom-Hutton's argument here pertains to the testimony of Dr. Perez regarding Holmstrom-Hutton's potential amenability to treatment. He argues that

> [a]s to subsection (a), . . . Dr. Perez' testimony supports transferring the matter. She testified there were several treatment programs that would benefit [Holmstrom-Hutton]. . . . She provided the only expert opinion that [Holmstrom-Hutton] is amenable to juvenile court services. The State did not offer differing expert opinion, nor present *any* evidence relative to the factors in Neb. rev. Stat. § 43-276(1).

Brief for appellant at 10-11 (emphasis in original). He further argues that when considered with the other factors set forth in § 43-276(1), including but not limited to Holmstrom-Hutton's lack of criminal history and lack of prior involvement in the juvenile court, the State simply did not overcome its burden to show that a sound basis existed for retaining the case in the district court.

As we stated before, the factors set forth in § 43-276(1) are provided to allow the court to weigh the factors and perform a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile. *State v. Aldana Cardenas*, 314 Neb. 544, 990 N.W.2d 915 (2023). After performing that balancing analysis, the district court concluded that the factors favored retaining jurisdiction in the district court. The factors that were especially concerning to the district court, and to this court, include the extremely violent nature of the alleged offenses, which involved gun violence; the short amount of time that the juvenile court would retain jurisdiction of now 17-year-old Holmstrom-Hutton if the case was transferred to the juvenile court; the risk to public safety; and the need for time beyond Holmstrom-Hutton reaching the age of majority for rehabilitative efforts to provide meaningful benefit to him.

We recognize that Dr. Perez revealed her diagnostic impressions of Holmstrom-Hutton and opined that his psychological disorders are readily treatable, that many of the treatment programs that she felt were appropriate for him lasted a year or less, and that she felt positive about the prospect of this treatment. But her testimony provides no assurance of remedying the danger posed to the public, as exhibited by Holmstrom-Hutton's prior conduct, within the short period of time the juvenile court would retain jurisdiction over him. And although Holmstrom-Hutton had not previously been a part of the juvenile court system, Dr. Perez' report describes a troubled past and severe escalation of criminal conduct which culminated in Holmstrom-Hutton accompanying a gang member or members with a stolen gun he obtained and then indiscriminately discharging that gun multiple times into a crowd of people. And although Holmstrom-Hutton's mother indicated he made progress while at DCYC, the record indicates he was involved in eight different fights in the short time he had been there. Thus, the district court was vested with the responsibility of deciding whether Holmstrom-Hutton could be reformed within the short period of time the juvenile court would retain jurisdiction over him, in light of Dr. Perez' belief that he was amenable to treatment within that time frame, balanced against the risk to the public if the attempted rehabilitation was unsuccessful.

Here, the court determined that the risk to the public outweighed the practical and nonproblematical rehabilitation of Holmstrom-Hutton under the limited time available to rehabilitate him in relation to this extremely dangerous act of violence. When the district court's

basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to juvenile court. *State v. Leroux*, 26 Neb. App. 76, 916 N.W.2d 903 (2018). Because there was ample evidence supporting retention of this case in the district court, we find no abuse of discretion in the district court's order denying Holmstrom-Hutton's request to transfer the case to juvenile court.

FAILURE TO ENTER DECISION WITHIN 30 DAYS

Holmstrom-Hutton also argues that the district court erred by failing to enter its decision within 30 days of the hearing pursuant to § 29-1816(3)(b).

Section 29-1816(3)(b) provides, in pertinent part, that "[t]he county court or district court shall make a decision on such motion within thirty days after the hearing and shall set forth findings for the reason for its decision." The Nebraska Supreme Court has noted that "[§] 29-1816 provides strict deadlines designed to expedite consideration and completion of any transfer from county court or district court to juvenile court." *State v. Aldana Cardenas*, 314 Neb. 544, 555, 990 N.W.2d 915, 925 (2023).

In *State v. Moreno*, 28 Neb. App. 581, 947 N.W.2d 330 (2020), the defendant argued that the district court created an excessive judicial delay when it took 4 months to issue its order denying his motion to transfer his case to the juvenile court. While this court recognized that juvenile hearings are "to progress expeditiously, we also recognize[d] that the determination of which court should exercise jurisdiction over a juvenile involves consideration of the juvenile's best interests and the public's safety. See § 43-276(1). In making this decision, the court should have before it all available information." *State v. Moreno*, 28 Neb. App. at 590, 947 N.W.2d at 337. This court held that "[b]ecause we find no abuse of discretion in the district court's refusal to transfer the case, we find no prejudice to Moreno for any delay." *State v. Moreno*, 28 Neb. App. at 600, 947 N.W.2d at 342.

Similarly, here, because we have found no abuse of discretion in the district court's refusal to transfer the case, we find no prejudice to Holmstrom-Hutton for any delay by the court in entering its order. This assignment of error fails.

CONCLUSION

Having determined that the district court did not abuse its discretion in finding that a sound basis existed for retaining jurisdiction of Holmstrom-Hutton's case in the district court and that there was no prejudice to Holmstrom-Hutton for any delay, we affirm.

AFFIRMED.